**Louis P. TORTORELLA, et al.**

v.

**UNITED STATES of America, et al.**

**Civil Action No. 06–10054–RGS.**

United States District Court,
D. Massachusetts.

April 30, 2007.

---

**160**

See, also, 2006 WL 2246420.

Brian M. Donovan, Office of the Attorney General, Boston, MA, for Defendants.

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS OR TRANSFER

STEARNS, District Judge.

On January 11, 2006, four Massachusetts Army National Guard (MNG) soldiers, Louis P. Tortorella,[1] Wayne R. Gutierrez, Joseph P. Murphy, and Steven M. Littlefield, filed this putative class action against the United States, the Commonwealth of Massachusetts, the MNG, and a number of federal and state officials.[2] Plaintiffs were among the many Guards-

---

1. Louis P. Tortorella died after the Complaint was filed. The court understands that his estate will move to have itself substituted as the lead plaintiff.

2. The Complaint named the following individuals in their official capacity: Francis J. Harvey, the Secretary of the Army; Donald H. Rumsfeld, the former Secretary of Defense; David M. Walker, the Comptroller General of the United States; Mitt Romney, the former Governor of Massachusetts; Martin J. Benison, the Comptroller of the Commonwealth of Massachusetts; Brigadier General Oliver J. Mason, Jr., the Adjutant General of the MNG; and Colonel Leonard Samborowski, the Inspector General of the MNG. The individual defendants were dismissed from the case on August 7, 2006.

men mobilized by the federal government in the aftermath of the terrorist attacks of September 11, 2001. Plaintiffs seek, on their own behalf and on behalf of the proposed class, payment of Temporary Duty Travel and Transportation Allowances (TDY) to reimburse personal expenditures that plaintiffs incurred for room and board while called to active duty. Plaintiffs allege that the call-up orders which they received on September 12, 2001, were stamped

  (a) Government Quarters Not Available;
  (b) Government Meals Not Available;
  [and] (c) Per Diem: Not Authorized

and, as such, were contrary to federal law. The Pay and Allowances Act provides that

  a member of a uniformed service is entitled to travel and transportation allowances for travel performed or to be performed under orders, without regard to the comparative costs of the various modes of transportation—

  (1) upon a change of permanent station, or otherwise, or when away from his designated post of duty regardless of the length of time he is away from that post;

  (2) upon appointment, call to active duty, enlistment, or induction, from his home or from the place from which

called or ordered to active duty to his first station. . . .

37 U.S.C. § 404(a).[3]

Plaintiffs allege that the refusal of defendants to pay TDY allowances also contravenes a specific provision of the National Guard Organization Act, 32 U.S.C. § 502(f). This statute requires Guardsmen to perform non-training duties without their consent in return for the "pay and allowances provided by law." Finally, plaintiffs allege violations of provisions of federal law requiring that all branches of the armed services be paid on a uniform basis. *See* 37 U.S.C. § 411. In addition to the federal statutory claims, plaintiffs assert common-law claims for breach of fiduciary duty, breach of contract, breach of the covenant of good faith and fair dealing, claims for non-payment of wages under G.L. c. 149, § 148, and a demand for treble (punitive) damages.[4]

■■■ On March 2, 2006, plaintiffs filed a motion for class certification. On March 20, 2006, the federal defendants responded with a motion to dismiss, arguing that the district court lacks subject matter jurisdiction because each plaintiff seeks damages in excess of $10,000. Under the Tucker Act, 28 U.S.C. § 1491(a)(1), the Court of Federal Claims has exclusive jurisdiction over non-tort claims against the United States where the amount in controversy exceeds $10,000.[5] The federal defendants

---

**3.** *See also* Joint Federal Travel Regulation (JFTR), Para. T4020.B.2 (Nov. 1, 2003) (requiring that military authorities provide an active duty soldier with transportation, lodging and food, or reimbursement for his or her reasonable and necessary ,authorized expenses).

**4.** Plaintiffs also allege more generic violations of the Equal Protection and Takings Clauses of the United States Constitution.

**5.** Defendants also argue that plaintiffs failed to exhaust the administrative remedies provided by the Army Board for Correction of Military Records (ABCMR). In opposition, plaintiffs have presented affidavits explaining

why they did not seek redress from the ABCMR. The parties agree that the court may look to these affidavits in deciding the issue. *Valentin v. Hospital Bella Vista*, 254 F.3d 358, 363 (1st Cir.2001) (in cases where a defendant challenges the accuracy of the jurisdictional facts asserted by the plaintiff, the defendant's challenge "permits (indeed, demands) differential fact finding."). The affidavits demonstrate that plaintiffs brought the failure to pay per diem issue to the attention of their commanding officers on a number of occasions without results. Because the directive that disallowed the per diem reimbursement was included in their official orders, plaintiffs argue that they were con-

also sought a stay of the motion for class certification until after the motion to dismiss was decided. On March 31, 2006, the Commonwealth defendants moved to dismiss on grounds that plaintiffs' claims for money damages are barred by the Eleventh Amendment and that, in any event, because the Guardsmen were mobilized for federal duty, relief, if any, is available only from the United States.[6]

On April 21, 2006, the court stayed the determination of the motion for class certification. On August 4, 2006, the court heard oral argument on the motions to dismiss. On August 7, 2006, the court stayed determination of the motions to dismiss to give the Department of Defense (DOD) the opportunity to conduct an audit to determine whether the Guardsmen were in fact owed back pay or per diem. The government agreed that it would pay any reimbursements that the audit found to be due and owing.[7] The court ordered the United States to file periodic status reports regarding the progress of the audit and the reimbursement process.[8] On February 22, 2007, the court held a hearing to review the final status report and to hear further argument on the motions to dismiss.[9]

It is settled law that " '[t]he United States, as a sovereign, is immune from suit save as it consents to be sued ..., and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.' " *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980), quoting *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). As a rule, "a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." *Lane v. Pena,* 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996). *See also Murphy v. United States,* 45 F.3d 520, 522 (1st Cir.1995).

The "Little Tucker Act" waives sovereign immunity and confers jurisdiction on the district court, concurrent with the jurisdiction of the Court of Federal Claims, to hear claims against the United States "not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an execu-

---

strained by the military chain of command to accept the orders as lawful. Plaintiffs plausibly allege that they did not appeal the rejection of their per diem claims because they believed that as soldiers they had no right to question the decision of their commanding officers. As a practical matter, it would have been futile for plaintiffs to appeal to the ABCMR, because its function is to determine whether errors were made in per diem reimbursements, not whether a call-up order violated the law by disallowing all per diem.

6. The court agrees with these arguments and will dismiss any remaining claims against the Commonwealth of Massachusetts.

7. According to the governments' Sixth and Final Status Report, as of February 16, 2007, the government had reimbursed 215 MNG soldiers whom the audit had identified as having claims due and owing. Under the terms of the court's prior orders, these claims were paid without any release or waiver of a recipient's right to litigate the accuracy of the amount paid by the government.

8. On September 15, 2006, plaintiffs renewed the motion for class certification and filed a motion for a preliminary injunction. The Commonwealth thereafter renewed its motion to dismiss. On October 10, 2006, the court held a hearing on the motions. On October 20, 2006, the court denied the request for an injunction and stayed the case for an additional period of time to permit the audit to be completed.

9. On April 19, 2007, the United States moved to transfer the case to the Court of Federal Claims. The motion is intended as an alternative to, and not a substitute for, the motion to dismiss.

tive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1346(a)(2). As previously noted, under the "Big Tucker Act," 28 U.S.C. § 1491(a)(1), non-tort claims against the United States in excess of $10,000 may be brought only in the Court of Federal Claims.

Plaintiffs concede that the interplay between the Big and Little Tucker Acts would ordinarily bar the district court from hearing their claims against the United States.[10] Plaintiffs contend, however, that the court retains jurisdiction by virtue of § 702 of the Administrative Procedure Act (APA), 5 U.S.C. § 702. Section 702 of the APA waives sovereign immunity when a plaintiff seeks non-monetary relief from a decision of a federal agency. Plaintiffs contend that while their prayer may sound in money damages, the relief they request is in fact injunctive in nature, because they are asking the court to "[e]njoin the irrational and wholly arbitrary distribution of expense reimbursement allowances to members of the [MNG] in violation of the Plaintiffs' constitutional rights to equal protection." [11]

Plaintiffs rely principally on a passage taken from *Bowen v. Massachusetts,* 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988). In *Bowen,* Justice Stevens, writing for a majority of the Court, observed that

[i]t is often assumed that the Claims Court has exclusive jurisdiction of Tucker Act claims for more than $10,000. (Title 28 U.S.C. § 1346(a)(2) expressly authorizes concurrent jurisdiction in the

district courts and the Claims Court for claims under $10,000.) That assumption is not based on any language in the Tucker Act granting such exclusive jurisdiction to the Claims Court. Rather, that court's jurisdiction is "exclusive" only to the extent that Congress has not granted any other court authority to hear the claims that may be decided by the Claims Court. If, however, § 702 of the APA is construed to authorize a district court to grant monetary relief—other than traditional "money damages"—as an incident to the complete relief that is appropriate in the review of agency action, the fact that the purely monetary aspects of the case could have been decided in the Claims Court is not a sufficient reason to bar that aspect of the relief available in a district court.

*Id.* at 910 n. 48, 108 S.Ct. 2722.

As defendants persuasively point out, this language, while seemingly broad, is of very limited application, as a number of courts have held. In a recent and analogous case, *Suburban Mortgage Assocs., Inc. v. U.S. Dep't. of Hous. & Urban Dev.,* 480 F.3d 1116 (Fed.Cir.2007), the Court of Appeals for the Federal Circuit aptly summarized the current state of the law as it pertains to *Bowen.*

This case requires us to reexamine the jurisdictional boundary between the Tucker Act and the Administrative Procedure Act, as that boundary is understood in the light of the Supreme Court's decision in *Bowen v. Massachusetts.* The case began as a dispute between plaintiff Suburban Mortgage ...

---

**10.** The total of the claims of each of the named plaintiffs is alleged to exceed $10,000.

**11.** The Amended Complaint, however, also requests that the court "[a]ward monetary damages to Plaintiffs on each count of Plaintiffs' Complaint in an amount to be determined at

trial: [t]reble such amount of damages, and award Plaintiffs their costs and attorney's fees as provided for by M.G.L. c. 149; [and a]ward exemplary and punitive damages in an appropriate amount to deter future conduct...."

and defendants, the United States Department of Housing and Urban Development . . . with regard to a contract for insurance. Plaintiff sued the Government in the United States District Court for the District of Columbia. The suit was cast in part as an action for specific performance of the contract and in part as a declaratory judgment action. The relief sought was to require the Government to perform its contract obligations so that Suburban Mortgage could get the money allegedly due it under the insurance agreement. . . . [D]espite Suburban's valiant effort to frame the suit as one for declaratory or injunctive relief, this kind of litigation should be understood for what it is. At bottom it is a suit for money for which the Court of Federal Claims can provide an adequate remedy, and it therefore belongs in that court.

*Id.* at 1117–1118. The Federal Circuit went on to observe that

[o]ne consequence of the *Bowen* case has been to create a sort of cottage industry among lawyers attempting to craft suits, ultimately seeking money from the Government, as suits for declaratory or injunctive relief without mentioning the money. . . . This court has had several opportunities to deal with such attempts, and to interpret and apply *Bowen.*

To thwart such attempted forum shopping, our cases have emphasized that in determining whether a plaintiff's suit is to be heard in district court or the Court of Federal Claims, we must look beyond the form of the pleadings to the substance of the claim. We have cautioned litigants that dressing up a claim for money as one for equitable relief will not

remove the claim from Tucker Act jurisdiction and make it an APA case. *Id.* at 1124.

The Amended Complaint at issue here suffers from the same defect as the one identified in *Suburban Mortgage.* No matter what dressing plaintiffs serve with the Amended Complaint, the taste is overwhelmingly that of a money award. Recognizing as much, plaintiffs in essence concede that most of their case belongs in the Court of Federal Claims. Nonetheless, they argue that this court should retain jurisdiction over the Equal Protection and Takings Clause claims. This is puzzling as there is no relief that this court can grant under these claims that is not more abundantly available in the Court of Federal Claims.

The court, however, understands that there are potential plaintiffs whose existing or remaining claims may not exceed $10,000. Consequently, the court will grant plaintiffs' counsel sixty days from the date of this Order to determine if any putative class members are willing to waive the recovery of damages in excess of $10,000. The court will retain jurisdiction over these claims under the Little Tucker Act. If warranted by numerosity, the court will entertain a motion for certification of a class of "Little Tucker" claimants. The case against the United States will otherwise be *TRANSFERRED* to the Court of Federal Claims. The claims against the Commonwealth of Massachusetts are *DISMISSED.* The Clerk will, however, retain the case on the court's docket for sixty (60) days pending the report of plaintiffs' counsel.[12]

SO ORDERED.

---

12. While the case is not concluded, there is much to commend on the part of the lawyers

involved. In the first instance, the diligence of plaintiffs' counsel, John Shek, is to be acknowledged in bringing this action to rectify the inexplicable failure of DOD to meet its commitments to the citizen soldiers who responded without hesitation to the emergency of September 11, and who endured personal financial hardship as a result. In the second instance, counsel for the United States, Assistant U.S. Attorney Mark Quinlivan, is to be commended for recognizing the potential that a wrong had been done and for seeking a means to rectify it before insisting that the court address the legal arguments supporting the motion to dismiss.